UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| **KIRBY INLAND MARINE, LP,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **MEDSTAR FUNDING, LC,** | § | |
| **ORTHOPEDIC & SPINE** | § | |
| **SURGICAL HOSPITAL OF SOUTH** | § | |
| **TEXAS, L.P. D/B/A SOUTH TEXAS** | § | |
| **SPINE & SURGICAL HOSPITAL;** | § | |
| **SOUTH TEXAS SPINAL CLINIC;** | § | |
| **M. DAVID DENNIS, M.D., P.A.;** | § | **CAUSE NO. 12-3107** |
| **PHILIP MANFREDI, M.D., P.A.;** | § | |
| **STAR ANESTHESIA, P.A.;** | § | |
| **MARTIN WIESENTHAL, M.D., P.A.;** | § | |
| **VALLEY BAPTIST MEDICAL** | § | |
| **CENTER; IOM SERVICES, L.L.C.;** | § | |
| and | § | |
| **TEXAS TELENEUROMONITORING** | § | |
| **SERVICES, P.A.;** | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kirby Inland Marine, LP a Texas limited partnership, files this Plaintiff's Original Complaint against Defendants MedStar Funding, LC; Orthopedic & Spine Surgical Hospital of South Texas, L.P. d/b/a South Texas Spine & Surgical Hospital, a Texas corporation; South Texas Spinal Clinic, P.A., a Texas professional association; M. David Dennis, M.D., P.A., a Texas professional association; Philip Manfredi, M.D., an individual; Star Anesthesia, P.A., a Texas professional association; Martin Wiesenthal, M.D., P.A., a Texas professional association; Valley Baptist Medical Center, a Texas non-profit corporation; IOM Services, L.L.C., a

1

Louisiana limited liability corporation; and Texas TeleNeuroMonitoring Services, P.A. a Texas professional association, and respectfully alleges as follows:

## I. PARTIES

1. Plaintiff, Kirby Inland Marine, LP is a limited partnership organized and existing under the laws of the State of Texas. Its principal place of business is located in Harris County, Texas.

2. Defendant, MedStar Funding, LC is a corporation organized and existing under the laws of the State of Texas. Its principal place of business is located at 13812 Flat Top Ranch Road in Austin, Texas 78732. MedStar Funding, LC may be served through its registered agent, Dan Christensen for service at his registered office, 13812 Flat Top Ranch Road in Austin, Texas 78732.

3. Defendant, Orthopedic & Spine Surgical Hospital of South Texas, L.P. d/b/a South Texas Spine & Surgical Hospital is a corporation organized and existing under the laws of the State of Texas. Its principal place of business is located in San Antonio, Texas. South Texas Spine & Surgical Hospital may be served through its registered agent for service and sole officer, director, C T Corporation System, at its registered office, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

4. Defendant, South Texas Spinal Clinic, P.A. is a Texas professional association organized and existing under the laws of the State of Texas. Its principal place of business is located in San Antonio, Texas. South Texas Spinal Clinic, P.A. may be served through its registered agent for service, Gilbert R. Meadows, at its registered office, 18626 Hardy Oak Blvd., Suite 300, San Antonio, Texas 78258.

5.	Defendant, M. David Dennis, M.D., P.A. is a Texas professional association organized and existing under the laws of the State of Texas.  Its principal place of business is located in San Antonio, Texas. M. David Dennis, M.D., P.A. may be served through its registered agent for service, M. David Dennis, at its registered office, 5282 Medical Drive, Suite 200, San Antonio, Texas 78229.

6.	Defendant, Philip Manfredi, M.D., is an individual citizen residing in the State of Texas.  His residence is located in San Antonio.  Philip Manfredi, may be served at 8042 Wurzbach Road, Suite 480, San Antonio 78229.

7.	Defendant, Star Anesthesia, P.A. is a professional association organized and existing under the laws of the State of Texas.  Its principal place of business is located in San Antonio, Texas.  Star Anesthesia, P.A. may be served through its registered agent for service Gordon R. Jaehne, at its registered office, 45 Northeast Loop 410, Suite 900, San Antonio, Texas 78216.

8. Defendant, Martin J, Wiesenthal, M.D., P.A. is a professional association organized and existing under the laws of the State of Texas.  Its principal place of business is located in San Antonio, Texas.  Martin J. Wiesenthal, M.D., P.A. may be served through its registered agent for service Martin J. Wiesenthal, at its registered office, 8038 Wurzbach Road, Suite 320, San Antonio, Texas 78229.

9.	Defendant, Valley Baptist Medical Center is a non-profit corporation organized and existing under the laws of the State of Texas.  Its principal place of business is located Harlingen, Texas.  Valley Baptist Medical Center may be served through its registered agent for service Alan Johnson, at its registered office, 2121 Pease Street, Fifth Floor, Harlingen, Texas 78550.

10. Defendant, IOM Services, L.L.C. is a limited liability corporation organized and existing under the laws of the State of Louisiana. Its principal place of business is located in Covington, Louisiana. IMO Services, L.L.C. may be served through its registered agent for service Paul A. Lea, Jr., at is registered office, 724 E. Boston Street, Covington, Louisiana, 70433.

11. Defendant, Texas TeleNeuroMonitoring Services, P.A. is professional association organized and existing under the laws of the State of Texas. Its principal place of business is located in Dallas, Texas. Texas TeleNeuroMonitoring Services, P.A. may be served through its registered agent for service CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

## II. JURISDICTION

12. Pursuant to Title 28, United States Code, Section 1331, this Court has subject matter jurisdiction over the claims alleged because such claims arise under the Constitution, laws, or treaties of the United States, namely general maritime law or are pendant thereto, which has been incorporated into the constitutional provision of U.S. Const. Art III § 2, extending judicial power of the United States to "all cases of admiralty and maritime jurisdiction."

## III. VENUE

13. Venue is proper in this District pursuant to Title 28, United States Code; Section 1391 (a) and (c) in that a substantial part of the events or omissions giving rise to the claim alleged herein occurred within this District.

## IV. FACTUAL BACKGROUND

14. Victor Sedano, a Kirby employee and Jones Act seaman was allegedly injured in September 2009, though there is uncertainty as to the actual date the incident occurred, while working aboard the M/V COLORADO. The general maritime law has been incorporated into the constitutional provision of U.S. Const. Art III § 2 which extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction." Under the Jones Act, 46 U.S.C. § 30104 *et. seq.,* a federal statute, a seaman is entitled to "maintenance and cure" for an illness or injury obtained in the "service of his ship." *See Aguilar v. Standard Oil Co.,* 318 U.S. 724, 87 L. Ed. 1107, 63 S. Ct. 930 (1943).

15. Maintenance and cure is a right given by the general maritime law in consequence of a seaman's status resulting from any employment contract between a seaman and his ship. Consistently, the courts have recognized that the maintenance and cure obligation cannot be abrogated by any agreement of the parties. The U.S. Supreme Court has held that the ship owner's liability for maintenance and cure was among the "the most pervasive" of all liabilities and that it was not to be defeated by restrictive distinctions nor narrowly confined. *See Vaughan v. Atkinson,* 369 U.S. 527, 8 L. Ed.2d 88, 82 S. Ct. 997 (1962). This right to maintenance and cure derives from, and is dependent upon, a seaman's maritime employment contract. *Id.*

16. In *Aguilar v. Standard Oil Co.,* 318 U.S. at 724, the court recognized that in the United States a ship-owner's maintenance and cure obligation has been consistently recognized as an implied provision in contracts of marine employment. Whether by traditional standards a ship owner is or is not responsible for a seaman's injury or sickness, stated the court, the owner is liable for the expense of curing it as an incident of the marine employer-employee relationship.

17. Furthermore, in *Fink v. Shepard S. S. Co.,* 337 U.S. 810, 93 L. Ed. 1709, 69 S. Ct. 1330 (1949), the court stated that an injured seaman's right to maintenance and cure was annexed to the employment, as an incident of the marine employer-employee relationship. Due to this employment contract between the ship owner and seaman, the U.S. Supreme Court has recognized that no agreement was competent to abrogate maintenance and cure as an incident to a maritime employment contract. *See Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 77 L. Ed. 368, 55 S. Ct. 173 (1932). And in *De Zon v. American President Lines, Ltd.,* 318 U.S. 600, 87 L. Ed. 1065, 63 S. Ct. 814, reh den., the Court stated that when a seaman becomes committed to the service of a ship, the maritime law annexes a maintenance and cure duty <u>that no private agreement is competent to abrogate</u> (emphasis added).

18. Victor Sedano, an employee of Kirby was a Jones Act seaman working on the M/V COLORADO at the time of his alleged incident on September 21, 2009. Under the general maritime law, Kirby as Victor Sedano's employer is obligated to provide him with maintenance and cure after his alleged injury in order for Victor Sedano to reach his maximum medical cure. Kirby was, is prepared and has attempted to provide such cure to Victor Sedano. *46 U.S.C. § 30101 et. seq.*

19. Defendants medical providers, provided treatment/medical care to Mr. Sedano for the injuries Sedano alleges were caused by the above-referenced incident. These providers did not present the charges for such treatment to Kirby, therefore, denying Kirby its right to investigate and pay cure. Defendants, rather, acting in concert with each other, entered into an assignment with Victor Sedano wherein Sedano agreed and assigned his interest in any settlement or judgment that may be rendered in his favor to the Defendant medical providers. (See Exhibit A). After Sedano made the assignment to the Defendant medical providers,

Defendant MedStar Funding, L.C. purchased the accounts receivables from Defendants. Defendant medical providers took such assignment in order to sell the assignment and accounts receivables to Defendant MedStar. This arrangement would not, it is Plaintiff's belief be allowed if Mr. Sedano was treated under a government health care plan such as Medicare or Medicaid.

20. The assignment precluded Victor Sedano from seeking payment to "any third-party payor, private health insurance plan, workers' compensation lien, occupational accident plan, or government sponsored health plan, included but not limited to, Medicare, Medicaid, VA, CHAMPUS, or any state funded program." (See Exhibit A, pg. 2). It irrevocably assigned any "compromise, settlement, arbitration, mediation, litigation, award, judgment or verdict, or any other collection activities on [his] pending claim" to the Defendants.

21. The assignment signed by Victor Sedano "waive[s] any right to object to any fees by the PROVIDER" and makes him "personally responsible for payment of same regardless of whether the RECOVERY, in any amount, is achieved or whether the amount of the RECOVERY is sufficient to pay the entire outstanding balance owed to PROVIDER." This arrangement, of course, places a duty on Victor Sedano he might not normally have as a seaman. It also places Kirby in a tenuous position vis-à-vis its obligations to provide Victor Sedano cure. The reasonable and customary payment for services arising from treatment to Victor Sedano is no longer to be determined by Kirby and the medical provider on behalf of Victor Sedano, but rather is now supposedly between the medical provider and MedStar; the holder and owner of the accounts receivable.

22. Moreover, Victor Sedano "agree[d] that [he] shall not submit any of PROVIDER'S medical bills arising out this lien for payment to another third-party payor, private

7

health insurance plan, workers' compensation plan, occupational accident plan, or government sponsored health plan, including but not limited to, Medicare, Medicaid, VA, CHAMPUS, or any state funded program." The relationship created by virtue of Victor Sedano assigning his interest over to the Defendants in exchange for medical services, arguably puts Kirby in a position of debtor to Defendant MedStar without having any right to contest the quantum of the debt; such a situation is at odds with the intent and purpose of the ancient doctrine of cure, and denies Kirby of its ability to fulfill its legal obligation of cure to Victor Sedano.

23. Defendant MedStar, by purchasing the assignments, which in Plaintiff's belief is a document drafted and required by MedStar, has attempted to usurp the general rule of law with regards Jones Act and general maritime law matters, and attempts to require additional duties of the Jones Act employer than is set out by law. MedStar, by purchasing an assignment, and Defendants medical providers, by taking such an assignment, intentionally attempt to circumvent the Jones Act employer's rights and duties under the cure obligation, and attempt to instead prejudice the Jones Act employer's rights by contract to which the Jones Act employer is not a party to.

24. The assignment, induced by Defendants alters Kirby's quasi-contractual relationship with Victor Sedano to provide cure. It actually estranges Kirby from the process. Providing such cure does not mean that Kirby is responsible for paying any and every billed cost for such medical treatment, but rather, just that which is reasonable and necessary. This assignment no longer makes the cure reasonable, and in effect, breaches the implied contract to do so that exists between him and Kirby.

25. By virtue of assigning Victor Sedano's account receivables to MedStar, Kirby was billed $221,233.29 by MedStar for Defendants medical providers' services. Such a billing

violates the Plaintiff's rights under the Jones Act and general maritime law, and is done for the purpose of attempting to deny Plaintiff its rights under the law. Defendants' attempt to circumvent the Jones Act and the general maritime law creates a scheme where the Jones Act employer is left without the ability to adjust the invoices based upon what is customary and reasonable, which is a right afforded to Plaintiff. An audit by Reny Corporation, a reputable medical bill review and managed care company adjusted Defendants invoices to reflect customary and reasonable charges. Accordingly, Kirby was overcharged by Defendants $169,579.29 or 76.7 percent (See Exhibit B).

## V. CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

26. Plaintiff incorporates each and every allegation set forth above into this cause of action.

27. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

28. At all times relevant to this suit, including on or after September 26, 2009, Defendants had actual and constructive notice of the quasi contractual relationship which existed between Plaintiff as employer and Victor Sedano as employee.

29. Defendants were aware of the identity of Victor Sedano's employer and that Victor Sedano was a Jones Act seaman whose medical treatment (cure) was a traditional right inherent in admiralty law, obligating Plaintiff as employer to pay the reasonable and necessary amount of such without interference from others.

30. Defendants, individually, and acting in concert with each other, intentionally acted in a way to interfere with Plaintiff's quasi contractual obligations concerning maintenance and cure.

31. Defendants intentionally, and tortuously interfered with Plaintiff's quasi contractual relationship with Jones Act seaman Victor Sedano by; among other things, (a) failure to seek payment directly from Plaintiff under its duty to pay cure; (b) requiring and/or inducing Victor Sedano to sign an agreement thereby breaching his quasi contractual relationship with Plaintiff; and (c) selling/factoring medical bills for an amount in excess of the usual and customary rate in an attempt to profit from (a) and (b) above, and to the detriment of Plaintiff.

32. Defendants willfully and intentionally interfered with Plaintiffs relationship with Mr. Sedano, directly resulting in Defendants' attempt to usurp Plaintiff's responsibilities of maintenance and cure; and, by attempting to preclude Plaintiff's right to provide reasonable and necessary cure to Mr. Sedano, Defendants instead used their interference in an attempt to circumvent Plaintiff's right to only provide reasonable and necessary cure in favor of unreasonable, unnecessary and inflated cure.

33. Defendants actions intentionally interfere with Plaintiff's performance of its cure obligations, by making Plaintiff's performance of its cure obligations impossible, more burdensome, difficult and expensive.

34. Defendants actions have resulted in Plaintiff being subject to excessive cure costs and demands, without the ability to rely on its duty of providing only reasonable and necessary cure.

## VI. CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

35. Plaintiff incorporates each and every allegation set forth above into this cause of action.

36. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

37. At all times relevant to this suit, including on or after September 26, 2009, Defendants had actual and constructive notice of the relationship which existed between Plaintiff as employer and Victor Sedano as employee.

38. Defendants were aware of the identity of Victor Sedano's employer and that Victor Sedano was a Jones Act seaman whose medical treatment (cure) was a traditional right inherent in admiralty law, obligating Plaintiff as employer to pay the reasonable and necessary amount of such without interference from others.

39. Defendants, acting individually and in concert with each other, intentionally acted in a way to interfere with Plaintiff's relationship with Mr. Sedano concerning maintenance and cure.

40. Defendants intentionally, and tortuously interfered with Plaintiff's relationship with Jones Act seaman Victor Sedano by; among other things, (a) failure to seek payment directly from Plaintiff under its duty to pay cure; (b) requiring and/or inducing Victor Sedano to sign an agreement thereby breaching his contract with Plaintiff; and (c) selling/factoring medical bills for an amount in excess of the usual and customary rate in an attempt to profit from (a) and (b) above, and to the detriment of Plaintiff.

41. Defendants willfully and intentionally interfered with Plaintiffs relationship with Mr. Sedano, directly resulting in Defendants' attempt to usurp Plaintiff's responsibilities of maintenance and cure; and, by attempting to preclude Plaintiff's right to provide reasonable and necessary cure to Mr. Sedano, Defendants instead used their interference in an attempt to circumvent Plaintiff's right to only provide reasonable and necessary cure in favor of unreasonable, unnecessary and inflated cure.

42. Defendants' actions in interfering with the relationship between Plaintiff and Mr. Sedano run counter to the Jones Act and general maritime law, in that the actions are designed to modify and alter Plaintiffs rights and duties thereby preventing Plaintiff from benefiting from laws concerning the payment of reasonable and necessary cure, and such actions are designed to intentionally defraud and misappropriate Plaintiff's funds designated for the payment of reasonable and necessary cure.

43. Defendants actions intentionally interfered with Plaintiff's performance of its cure obligations, by making Plaintiff's performance of its cure obligations impossible, more burdensome, difficult and expensive.

44. Defendants actions have resulted in Plaintiff being subject to excessive cure costs and demands, without the ability to rely on its duty of providing only reasonable and necessary cure.

## VII. CAUSE OF ACTION: CONVERSION

45. Plaintiff incorporates each and every allegation set forth above into this cause of action.

46. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

47. Plaintiff possesses the right, given it under the Jones Act and general maritime law, to provide reasonable and necessary cure. Cure is a non-delegable duty placed upon Plaintiff, but along with the non-delegable duty comes the right to only pay reasonable and necessary cure, to cure providers.

48. Defendants have exercised control over, and taken from Plaintiff, Plaintiff's right to provide reasonable and necessary cure to Mr. Sedano. By preventing Plaintiff from providing cure direct to Mr. Sedano or Mr. Sedano's medical providers, Defendants have converted Plaintiff's rights under the law, and such conversion has prevented Plaintiff from fulfilling its legal obligations and subjected Plaintiff to excess costs.

## VIII. CAUSE OF ACTION:
## AIDING, ABETTING, ASSISTING, ENCOURAGING

49. Plaintiff incorporates each and every allegation set forth above into this cause of action.

50. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

51. Each Defendant, individually and in concert, committed the causes of action outlined in this Complaint. In committing these causes of action, each Defendant, individually and in concert, aided, abetted, assisted and encouraged the causes of action herein identified, each other Defendant.

52. Each Defendant knew or should have known that the actions of other Defendants constituted an actionable cause of action and with such knowledge, such action taken for the intended detriment of Plaintiff, aided, abetted, assisted or encouraged each other to commit the causes of action herein set out, and, each such action was a substantial factor in committing such cause of action.

## IX. CAUSE OF ACTION:
## AIDING, ABETTING, ASSISTING, PARTICIPATING

53. Plaintiff incorporates each and every allegation set forth above into this cause of action.

54. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

55. Each Defendant, individually and in concert, committed the causes of action outlined in this Complaint. In committing these causes of action, each Defendant, individually and in concert, aided, abetted, assisted and participated in the causes of action herein identified each other Defendant.

56. Each Defendant knew or should have known that the actions of other Defendants constituted an actionable cause of action and with such knowledge, such action taken for the intended detriment of Plaintiff, aided, abetted, assisted or substantially participated with each other to commit the causes of action herein set out, and, each such action was a substantial factor in committing such cause of action.

## X. CAUSE OF ACTION: CONSPIRACY

57. Plaintiff incorporates each and every allegation set forth above into this cause of action.

58. At all times relevant hereto Mr. Sedano was employed by Plaintiff as a seaman and therefore there was a relationship between Plaintiff and Mr. Sedano which gives rise to the quasi contractual duty of maintenance and cure.

59. Each Defendant, individually and in concert, committed the causes of action outlined in this Complaint. In committing these causes of action, each Defendant, individually and in concert, acted together to usurp the Jones Act and the general maritime law, to the detriment of Plaintiff.

60. Each Defendant knew or should have known that the actions of other Defendants constituted an actionable cause of action and with such knowledge, such action taken for the intended detriment of Plaintiff, and acted in concert and had a meeting of the minds to commit the causes of action herein set out.

## XI. DAMAGES

61. Plaintiff seeks an unliquidated amount of damages, both compensatory and exemplary, as well as attorneys fees, for the above causes of action.

## XII. PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff Kirby Inland Marine, L.P. respectfully prays for a judgment against Defendants as follows:

    a.    Actual damages;
    b.    Exemplary damages;
    c.    An award of attorney's fees and costs as allowed by law; and

15

  d. An award of prejudgment and post-judgment interest on all sums awarded; and for such other relief as the court may deem just, equitable, and appropriate.

          Respectfully submitted,

          STEPP & SULLIVAN, P.C.


          */s/ Jad J. Stepp*
          Jad J. Stepp
          State Bar No. 19169100
          Federal Bar No. 5856
          Dennis J. Sullivan
          State Bar No. 19473750
          Federal Bar No. 15100
          1010 Lamar St. Suite 810
          Houston, TX 77002
          Tel. No.: (713) 336-7203
          Fax No.: (713) 336-7250

          **ATTORNEYS FOR KIRBY INLAND MARINE, LP, PLAINTIFF**