UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIRBY INLAND MARINE, L.P., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-03107 |
| | § | |
| MEDSTAR FUNDING, LC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is a motion to dismiss for lack of subject-matter jurisdiction filed by defendants Texas TeleNeuroMonitoring Services, P.A.; Orthopedic & Spine Surgical Hospital of South Texas, L.P., d/b/a South Texas Spine & Surgical Hospital; South Texas Spinal Clinic, P.A.; M. David Dennis, MD, P.A.; Philip Manfredi, MD; Star Anesthesia, P.A.; Martin Wiesenthal, MD, P.A.; Valley Baptist Medical Center; IOM Services, LLC ("medical provider defendants"); and MedStar Funding, LC ("MedStar") (collectively, the "moving defendants"). Dkt. 16. After considering the complaint, briefing, record evidence, and applicable law, the moving defendants' motion to dismiss (Dkt. 16) is **GRANTED**. Kirby's third amended complaint (Dkt. 45) is **DISMISSED WITHOUT PREJUDICE**. All other pending motions are **DENIED AS MOOT**.

**I. BACKGROUND**

This case arises from a seaman's personal injury claim. The seaman, Victor Sedano ("Sedano"), was employed by Kirby Inland Marine, LLC ("Kirby") as a deckhand aboard the M/V COLORADO (the "vessel"). Dkt. 16, Ex. 1 (Sedano's original petition in Nueces County) at 2; *Victor Sedano v. Kirby Inland Marine, L.P.*, Cause No. 2011-CCV-61859-2 (Nueces Cnty. Ct. at Law No. 2 Sept. 2, 2011) (hereinafter the "Nueces County case"). On or about September 28 or 29,

2009, Sedano was standing on a barge in the Corpus Christi Ship Channel, ready to secure that barge to the vessel. *Id.* at 2–3. At some point during the process, Sedano alleges he was given a heavy wire that "overloaded Plaintiff's back, thereby causing Plaintiff to sustain . . . injuries." *Id.* at 3.

As a result of these injuries, Kirby provided Sedano certain "maintenance and cure" payments, which Kirby concedes it must provide under general maritime law. Dkt. 26 (Kirby's response to defendants' motion to dismiss) at 4.[1] Kirby made cure payments in 2009 and 2010, without major problems, as Sedano received treatment from the medical provider defendants. *Id.*; Dkt. 45 (Kirby's third amended complaint) at 6 ¶ 21. However, in 2011, issues arose between the parties. On April 12, 2011, through a series of written assignments of interest (the "assignments"), Sedano assigned the interest in his recovery to the medical provider defendants to satisfy his medical services debt. *See* Dkt. 16, Ex. 2 (MedStar's petition in intervention in the Nueces County case) at 2 ¶¶ 8–9. Sedano granted a lien to the medical provider defendants on any recovery that he might obtain, through settlement or otherwise, against Kirby in the Nueces County case. *See, e.g.*, Dkt. 26, Ex. B (assignment of interest to IOM Services, LLC) at 1. Sedano further agreed not to contest the medical provider defendants' charges as unreasonable or excessive, and he authorized each medical provider "to institute necessary legal action against the party at fault in my name." *Id.* at 2. The assignments specify that Texas law governs "any litigation relating to this lien," and the assignments designate the courts of Travis County, Texas as the chosen forum for any disputes. *Id.* at 3. The medical provider defendants thereafter sold their medical bills, secured by the assignments, to MedStar. Dkt. 16, Ex. 2 at 3 ¶ 11.

---

[1] Every vessel owner owes a maintenance and cure duty under maritime law to provide "food, lodging, and medical services to a seaman injured while serving the ship." *Beech v. Hercules Drilling Co.*, 691 F.3d 566, 570 (5th Cir. 2012) (internal quotation marks omitted). Specifically, maintenance covers a living allowance for food and shelter, and cure covers the seaman's medical expenses. *Cabrera Espinal v. Royal Caribbean Cruises, Ltd.*, 253 F.3d 629, 631 (11th Cir. 2001).

2

On September 2, 2011, Sedano sued Kirby for damages under the Jones Act and general maritime law in the Nueces County Court at Law No. 2. Dkt. 16, Ex. 1. While this suit was pending in Nueces County, Sedano's attorney sent a letter dated June 27, 2012 to Kirby, informing the company of MedStar's purported lien. Dkt. 26 at 5; Dkt. 26, Ex. C (demand letter). Sedano's attorney sought a resolution of the outstanding claim for cure payments in the amount of $221,223.29.[2] Dkt. 26 at 5. To evaluate the demand, Kirby sought discovery in the Nueces County lawsuit as to the terms and nature of the contracts and arrangements between MedStar and the medical provider defendants. Dkt. 26 at 5. MedStar resisted this discovery and filed a motion to quash in Travis County state court. Dkt. 26, Ex. D (MedStar's motion to quash Kirby's discovery); *MedStar Funding, LC, et al. v. Kirby Inland Marine, L.P.*, Cause No. 12-2658 (Travis Cnty. Dist. Ct. Aug. 29, 2012).

Meanwhile, back in Nueces County, Kirby and Sedano were preparing for a December 12, 2012 trial setting when the case settled at mediation on October 12.[3] Dkt. 26 at 6. Kirby filed the instant case in this court on October 18, 2012, seeking damages under several tort-based theories related to the medical provider defendants' alleged interference with Kirby's cure duties owed to Sedano. Dkt. 1. Kirby amended its complaint on October 29, 2012, and asserted claims for tortious

---

[2] The demand letter's medical charge summary states that the medical providers are owed $244,807.74 for Sedano's care. Dkt. 26, Ex. C at 6. However, as the parties apparently agree that the amount-in-controversy is $221,223.29, the court will cite this figure as the amount that would satisfy MedStar's purported lien in full. *See, e.g.*, Dkt. 26 at 5 (Kirby's citation of the lesser figure as the current amount-in-controversy); Dkt. 26, Ex. E (MedStar's response to Sedano's Nueces County interpleader) at 1 ¶ 5 (stating that "the amount of MedStar's interest to be paid out of any settlement proceeds is $221,223.29."). The court also notes that Kirby's cited figure is ten dollars greater than MedStar's, at $221,233.29. *See, e.g.*, Dkt. 26 at 5–7. However, because this difference is immaterial to the evaluation of the motion to dismiss, the court will use MedStar's cited number in its analysis.

[3] Kirby and Sedano executed a formal settlement agreement on January 3, 2013, effectively ending the dispute between them. Dkt. 26 at 6. According to Kirby, Kirby paid $600,000 to Sedano for the liability and damages portion of his case, agreed to pay reasonable and necessary cure to be determined at a later date, and indemnified Sedano against demands for payment from MedStar or the medical provider defendants. *Id.*

3

interference with contract and claims for declaratory relief to invalidate the assignments and determine its liability to Sedano for cure payments. Dkt. 3.

On November 13, 2012, MedStar intervened in the Nueces County case, asserting a right to $221,223.39 of Sedano's pending settlement with Kirby. Dkt. 16, Ex. 2 at 4 ¶¶ 24–25. On December 19, 2012, Kirby moved for leave to deposit the disputed cure payment into this court's registry. Dkt. 15. Before the motion for leave became ripe, however, MedStar moved to dismiss Kirby's first amended complaint on January 8, 2013. Dkt. 16. Two days later, on January 10, Sedano interpled $221,223.39 into the registry of the Nueces County court. Dkt. 26 at 7. MedStar responded to Sedano's interpleader on January 10 and asserted its claim to the disputed funds. Dkt. 26, Ex. E at 2 ¶¶ 6–8. Then, on January 25, 2013, Sedano moved to intervene in this case, seeking to invalidate his assignments of interest or, if the assignments are held to be valid, to confirm his right to indemnification from Kirby. Dkt. 21.

On February 26, 2013, Kirby filed a second amended complaint against MedStar, the medical provider defendants, and Sedano. Dkt. 33. Kirby asserted the same claims against MedStar and the medical provider defendants as those in its first amended complaint, and Kirby added a declaratory judgment claim against Sedano that seeks the same relief as its other declaratory judgment claim, namely the invalidation of the assignments of interest. *Id.* at 11–12 ¶¶ 45–49.

On April 17, 2013, Sedano moved to dismiss Kirby's claims against him and moved for more definite statement. Dkt. 43. Kirby responded to Sedano's motion on May 8, 2013 and also filed a third amended complaint. Dkts. 44–45.[4]

---

[4] The court recognizes that the moving defendants' motion to dismiss was directed at Kirby's first amended complaint. However, because Kirby's live complaint, like the previous complaints, does not provide a sufficient basis for retaining jurisdiction over Kirby's claims for declaratory relief or the exercise of supplemental jurisdiction over the state-law claims, the court grants the motion to dismiss, as applied to the third amended complaint, without the need for further briefing. *Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 331 n.1 (5th Cir. 2011).

Kirby's causes of action in its live pleading can be divided into two categories: (1) declaratory judgment claims against MedStar, the medical provider defendants, and Sedano seeking to invalidate the purported assignments and declare Kirby's liability for cure to Sedano; and (2) claims for tortious interference of contract against MedStar and the medical provider defendants and breach of contract against Sedano.

The moving defendants move to dismiss Kirby's declaratory judgment and tort claims for lack of subject-matter jurisdiction and, if the court finds jurisdiction over the declaratory judgment claims, on the alternative grounds that the court should abstain from exercising jurisdiction.[5] The court begins its legal analysis with Kirby's claims for declaratory relief.

## II. DECLARATORY JUDGMENT

### A.   *Governing Law*

Before considering the merits of a declaratory judgment action, a district court must first determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Because the court's decision turns on its discretion to retain or dismiss the action, *see infra*, the court restricts its analysis to the third element and assumes, *arguendo*, that Kirby's declaratory judgment claims are justiciable and within the court's subject-matter jurisdiction.

---

[5] The court considers the moving defendants' arguments as to Kirby's declaratory judgment claims against the moving defendants and Sedano, even though Sedano has not specifically moved for dismissal on these grounds. Kirby requested identical relief against all defendants, namely the avoidance of Sedano's assignments and a determination of Sedano's cure. *See Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984) (holding that a district court may dismiss a claim on its own motion in certain circumstances); *see also Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . .").

5

When a district court considers abstaining from exercising jurisdiction in a declaratory judgment action, the inquiry is governed by the standard derived from the Supreme Court's seminal case of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S. Ct. 1173 (1942). *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651–52 (5th Cir. 2000). *Brillhart* holds that a district court has wide discretion in determining whether to hear an action under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137 (1995). This discretion is not without limits, however, and the court may not dismiss a declaratory judgment claim "on the basis of whim or personal disinclination." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989). Rather, the Fifth Circuit recognizes seven factors for a district court to consider when determining whether to decide or dismiss a declaratory judgment action. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)). The seven *Trejo* factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.*

### B.	Application of the *Trejo* *Factors*

The *Trejo* factors are nonexclusive and not applied mechanically. They are instead fashioned to address three fundamental concerns when deciding whether to retain or dismiss a declaratory judgment suit: federalism, fairness, and efficiency. *Sherwin-Williams*, 343 F.3d at 390–92.

### 1.	Federalism

The federalism concerns presented in declaratory judgment actions refer to the proper allocation of decision-making between state and federal courts. *Id.* at 390. The court must consider comity and efficiency when there is a pending state-court action in which all the matters in the controversy may be litigated. *Id.* at 391. The Fifth Circuit has held that "[w]hen a pending state court suit raises the same issues as a federal declaratory judgment action, the central question for a district court . . . is whether the controversy is better decided in state or federal court." *Id.* at 392. Further, when parallel suits are pending with federal and state-law issues, the court should consider the interrelationship of federal- and state-law questions and the abilities of the respective tribunals to resolve those issues. *Id.* at 396.

This case arose in unusual circumstances. The Nueces County case had been pending in state court for over a year when it was effectively settled on or about October 12, 2012. Dkt. 26 at 6. Kirby agreed to indemnify Sedano against any demands for payment from MedStar or the medical provider defendants and to pay Sedano reasonable and necessary cure to be determined at a later date. *Id.* On October 18, 2012, Kirby filed the instant case in this court and sought damages against MedStar and the medical provider defendants, who had not been previously joined in the Nueces County case. Dkt. 1. Less than one month later, on November 13, 2012, MedStar intervened in the Nueces County case, asserting its right to part of Sedano's pending settlement proceeds. Dkt. 16, Ex. 2 at 3. On January 10, 2013, Sedano interpled $221,223.39 into the registry of the Nueces

County court, and MedStar filed a response the same day asserting a right to those funds. Dkt. 26, Ex. E at 1–2. While the moving defendants' motion to dismiss was pending, Kirby amended its complaint two times, adding claims against Sedano. Dkts. 33, 45. In its live pleading, Kirby asserts declaratory judgment claims against all defendants, seeking to invalidate the purported assignments and declare Kirby's liability to Sedano for cure, and asserts claims against the defendants for tortious interference and breach of contract. Dkt. 45 at 9–16. Thus, there are now two cases, one pending in state court and the other pending in federal court with identical issues related to the validity of the MedStar assignments and the amount of Sedano's cure. And while the Nueces County case predates this litigation by more than a year, Kirby's declaratory judgment action related to the assignments was filed in this court one month before MedStar intervened in state court.

Despite the fact that the instant case was in some sense filed first, the court finds that the federalism concerns weigh in favor of declining jurisdiction in this forum. The Nueces County case is now a suitable case for determining all the issues pending before this court, including the validity of the purported assignments. Further, the issues related to Sedano's cure, while federal in nature, counsel in favor of declining jurisdiction. Under the savings to suitors clause of 28 U.S.C. § 1333(1), a litigant asserting maritime claims may choose whether to bring his claims in federal or state court. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001). Sedano filed his Jones Act and maritime claims in Nueces County originally, and his choice of forum should be respected. The state court should determine his rights to cure and the validity of the purported assignments within the original lawsuit Sedano filed. *See Brown Water Marine Serv., Inc. v. Alvarado*, Nos. V-12-6, V-12-17, 2012 WL 2994459, at *3 (S.D. Tex. July 20, 2012) (Costa, J.) (holding that a seaman's right to cure payments should be adjudicated in state court, where he initially filed Jones Act and maritime claims, rather than in a federal declaratory judgment action).

8

## 2. Fairness

The next three *Trejo* factors are whether the declaratory judgment plaintiff filed suit in anticipation of a lawsuit to be filed by the declaratory judgment defendant; whether the declaratory judgment plaintiff engaged in forum shopping in bringing the declaratory judgment action; and whether possible inequities exist in allowing the declaratory judgment plaintiff to gain precedence in time or to change forums. *Sherwin-Williams*, 343 F.3d at 391. The primary concern of the federal court in analyzing these factors is to ascertain whether the declaratory judgment plaintiff is using the federal declaratory judgment act with improper purposes. *See id.* But "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Id.*

Here, although Kirby sued the moving defendants in federal court instead of impleading them in the Nueces County case, the court cannot say that Kirby was engaged in impermissible forum shopping. Kirby alleged certain federal-question claims that Kirby may have believed were most appropriate for adjudication by a federal court. Although rhe court ultimately disagrees with this logic for the reasons explained in this order, there is no evidence to indicate that Kirby's motivations were improper or unfair to the moving defendants or Sedano. Accordingly, these factors are neutral.

## 3. Efficiency

The last factors that the court considers, the fifth and sixth *Trejo* factors, address the efficiency of hearing the case in a federal or state forum.[6] *See id.* These factors require the court to consider whether the federal court is a convenient forum for the parties and witnesses and whether retaining the lawsuit would serve judicial economy. *Id.* at 392. "Duplicative litigation may also

---

[6] The seventh *Trejo* factor relates to the potential consideration of a state court's judicial decree affecting the parties before the court. *Trejo*, 39 F.3d at 591. The parties have not identified any judicial decree in the Nueces County case relevant to this proceeding, and this factor is therefore neutral.

raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues." *Id.* at 391.

Here, the efficiency considerations weigh heavily in favor of dismissal. While the court has not received any evidence tending to show that this forum would be inconvenient for the parties or witnesses, retention of this case in federal court would not serve judicial economy. Sedano has interpled the sum at issue between Kirby and MedStar into the registry of the state court, and MedStar's intervention raises the principal issues remaining among the parties. The Nueces County court also has the greatest familiarity with facts related to Sedano's treatment, and that knowledge and expenditure of judicial resources should not be ignored.

The court finds that the *Trejo* factors, when considered in their totality, weigh in favor of abstaining jurisdiction. The court will therefore dismiss Kirby's claims for declaratory relief against all defendants.

### III. TORTIOUS INTERFERENCE WITH CONTRACT

Kirby also asserts a claim for tortious interference with contract against MedStar and the medical provider defendants. Dkt. 45 at 11–12. Kirby alleges that MedStar and the medical provider defendants, through the execution and sale of the assignments of interest, improperly interfered with Kirby's cure obligations to Sedano as a Jones Act seaman. *Id.* at 11 ¶ 46. The moving defendants respond that the court lacks jurisdiction over Kirby's tortious interference claim because the tort did not occur on navigable water, a necessary predicate for admiralty tort jurisdiction. Dkt. 16 at 5–9.

A party seeking to invoke admiralty jurisdiction in tort must satisfy two conditions regarding the location and connection of the alleged tort with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043 (1995); *Kuehne & Nagel (AG*

*& Co.) v. Geosource, Inc.*, 874 F.2d 283, 289–90 (5th Cir. 1989) (holding that both conditions must be met to vest admiralty tort jurisdiction in a federal court for a claim of tortious interference with contract). Under the location test, the court must determine whether the tort occurred on navigable water or an injury suffered on land was caused by a vessel on water. *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010).

Kirby does not contend that the alleged tortious interference occurred on navigable water or that its injury was caused by a vessel. This omission is logical, as the conduct occurred on land related to the provision of shoreside medical services. Instead, Kirby argues that admiralty jurisdiction over one claim extends jurisdiction over other claims, citing *Scarborough v. Clemco Indus.*, 391 F.3d 660, 665–66 (5th Cir. 2004). *Scarborough* is inapposite, however, because the court's holding addressed the connection, or "substantial relationship," test, not the location test. *Id.* The *Scarborough* court held that if one tortfeasor engaged in traditional maritime activities, the connection test was satisfied and admiralty jurisdiction extended to maritime and non-maritime tortfeasors. *Id.* at 665. Here, this court need not consider whether the connection test can be satisfied under *Scarborough* because Kirby's claim fails the location test. *Grubart*, 513 U.S. at 534 (explaining that both tests must be met before a court can exercise admiralty jurisdiction over a tort claim). *Scarborough* thus does not provide a basis for admiralty jurisdiction over Kirby's tortious interference claim.

Kirby alternatively argues that even if its tortious interference claim arises under state law, the court should exercise supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367. Dkt. 26 at 18–19. That statute provides for federal jurisdiction "over ... claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a); *City of Chi. v. Int'l Coll.*

*of Surgeons*, 522 U.S. 156, 164–65, 118 S. Ct. 523 (1997) (reaffirming the federal courts' principle of supplemental jurisdiction (formerly pendent and ancillary jurisdiction), by which the court's original jurisdiction over federal claims extends to other claims that "derive from a common nucleus of operative fact") (internal quotation marks omitted).

Because the court has already declined jurisdiction over Kirby's claims for declaratory relief, no federal question remains before the court. However, the dismissal of the federal claims does not preclude an exercise of the court's supplemental jurisdiction. *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 373 F. App'x 438, 441 (5th Cir. 2010) ("The subsequent dismissal of all federal claims from [plaintiff's] suit did not divest the district court of supplemental jurisdiction over the remaining state-law claims."). Rather, the court may decline to exercise supplemental jurisdiction following dismissal of the federal claims. 28 U.S.C. § 1367(c). Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a [pendent] claim ... if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> *Id.*

The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7, 108 S. Ct. 614 (1988). And in this circuit, the general rule is to dismiss state-law claims following dismissal of the federal claims. *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). But despite the general rule, the court must weigh four factors in deciding whether to keep a state-law claim in these circumstances: (1) judicial economy, (2) convenience, (3) fairness, and (4) comity. *Carnegie-Mellon*, 484 U.S. at 350.

First, the judicial-economy factor requires an assessment of whether resources would be saved if the court maintains jurisdiction. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* Here, this factor weighs against exercising jurisdiction because the case has not meaningfully progressed in this forum and could be heard in the Nueces County court that has already handled the underlying Jones Act litigation.

Second, as to convenience, the court considers whether the change in forum to the state court would produce undue hardship to the parties. *Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 306 (5th Cir. 2007). This case involves events regarding the underlying claims that originated in Nueces County and includes the principal parties that are litigating the assignment and settlement issues in state court. Accordingly, dismissal in favor of the Nueces County case would not produce any hardship to the parties, and this factor weighs in favor of declining supplemental jurisdiction.

Third, in weighing the fairness factor, the court must consider whether a dismissal would foreclose relief if state statutes of limitation would bar refiling of a dismissed claim or present a danger of conflicting rulings between the federal and state courts. *Carnegie-Mellon*, 484 U.S. at 351–52; *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). There is no indication that an applicable statute of limitation would bar Kirby's claim against the defendants, nor would there be a danger of conflicting rulings. Apart from the court's order staying discovery while it considered

13

defendants' motion to dismiss, the court has not issued any substantive rulings in this case. The third factor weighs in favor of dismissal.

The fourth and last factor, comity, weighs strongly in favor of dismissal. As discussed above, the state court in Nueces County is the best forum for considering issues relating to Sedano's cure, as he brought suit in that court originally. Further, the Nueces County court is best suited to consider the state-law tortious interference claim, as state courts are courts of general jurisdiction and the primary forum for adjudication of state-law issues. *Parker & Parsley*, 972 F.2d at 588–89 ("The federal courts are courts of limited jurisdiction . . . and often are not as well equipped for determinations of state law as are state courts.") (citation omitted). This factor thus weighs heavily in favor of dismissal.[7]

In sum, the court lacks original jurisdiction over Kirby's state-law claims of tortious interference and breach of contract, and the court declines supplemental jurisdiction over those claims after the dismissal of Kirby's declaratory judgment causes of action.

---

[7] The same analysis regarding the lack of original jurisdiction and abstention from supplemental jurisdiction applies to Kirby's claim for breach of contract against Sedano. Kirby's agreement to indemnify Sedano for MedStar's payment demands is not maritime in nature, as the subject matter is indemnification and not maritime services, and it is thus not a maritime contract within the court's admiralty jurisdiction. *See Cons. Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson*, 645 F. Supp. 884, 886 (S.D. Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim."); *Mulvaney v. Dalzell Towing Co.*, 90 F. Supp. 258, 260 (S.D.N.Y. 1950) (holding that "an action for breach of a contract to compromise or settle . . is not within the admiralty jurisdiction"). The court also declines to exercise supplemental jurisdiction over the breach of contract claim for the same reasons it declines to exercise jurisdiction over Kirby's claim of tortious interference with contract.

## IV. Conclusion

After considering the extensive briefing on the motion to dismiss, the evidence of record, and the applicable law, the court declines to exercise jurisdiction over Kirby's declaratory judgment claims and declines to exercise supplemental jurisdiction over Kirby's claims of tortious interference and breach of contract. The moving defendants' motion to dismiss (Dkt. 16) is **GRANTED**. Kirby's third amended complaint (Dkt. 45) is **DISMISSED WITHOUT PREJUDICE**. Because the court declines jurisdiction over Kirby's claims, Kirby's motion to deposit funds into the registry of the court (Dkt. 15) is **DENIED AS MOOT**.

Further, Kirby named Sedano as a defendant in its second and third amended complaints, and thus Sedano's motion for leave to intervene (Dkt. 21) is **DENIED AS MOOT**. Finally, given the dismissal of Kirby's declaratory judgment claims against all defendants, Sedano's motion to dismiss and for more definite statement (Dkt. 43) is **DENIED AS MOOT**.

It is so **ORDERED**.

Signed at Houston, Texas on May 17, 2013.

_____
Gray H. Miller
United States District Judge